**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                :
UNITED STATES OF AMERICA        :
                                :    No.  1:14-cr-00050-NLH
     v.                         :
                                :
DOMINIQUE VENABLE,              :    **OPINION**
                                :
          Defendant.            :
_____:

**APPEARANCES**:


DOMINIQUE VENABLE
# 65342-050
USP CANAAN
U.S. PENITENTIARY
P.O. BOX 300
WAYMART, PA  18472

     *Pro Se*


PATRICK C. ASKIN
OFFICE OF THE US ATTORNEY
401 MARKET STREET
4TH FLOOR
CAMDEN, NJ 08101

     *Counsel for the United States*


**Hillman**, **District Judge**

     Before the Court is Dominique Venable's ("Defendant") Motion

for Reduction of Sentence under the First Step Act, 18 U.S.C. §

3582(c)(1)(A).  (ECF 1113).  For the reasons expressed below,

Defendant's Motion will be denied.

**Background**

On January 16, 2015, Defendant was found guilty by a jury
of conspiracy to distribute and possess with intent to
distribute one kilogram or more of heroin within 1000 feet of a
public housing complex, in violation of 18 U.S.C. §§ 841(a)(1),
841(b)(1)(A), and 21 U.S.C. §§ 846 and 860.  (See ECF 679).  He
was also convicted of possession and discharge of a firearm in
furtherance of a drug trafficking crime and use of a telephone
to further a drug trafficking conspiracy, in violation of 18
U.S.C. § 924(c)(1)(A)(iii) and 21 U.S.C. § 843(b).  (Id.)
Thereafter, on May 15, 2015, the Honorable Joseph E. Irenas
sentenced Defendant to a term of imprisonment of 240 months and
a 10-year term of supervised release.  (See id.)  Defendant's
release date is projected to be October 13, 2030.[1]

Defendant filed the instant pro se motion on April 21,
2022.  (ECF 1113).  The Government filed a letter in opposition
on August 30, 2022.  (ECF 1157).  The Court considers
Defendant's motion against this procedural and factual backdrop.

**Legal Standard**

"The First Step Act empowers criminal defendants to request
compassionate release for 'extraordinary and compelling
reasons.'"  United States v. Raia, 954 F.3d 594, 595 (3d Cir.

---

[1] FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/
inmateloc/ (last visited August 30, 2022).

2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence before the sentencing court, defendants first "must ask the Bureau of Prisons to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals."  Id.  "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release."  United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(C)(1)(A)); see also Raia, 954 F.3d at 595.

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if after finding extraordinary and compelling reasons warrant a reduction, that such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission and that the applicable sentencing factors under § 3553(a) warrant a reduction.  United States v. Pabon, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020).

**Discussion**

**1. Defendant has satisfied the exhaustion requirements**

Defendant applied to the BOP for release and 30 days passed without a response from the BOP.  (ECF 1157 at 2).  The

3

Government does not contest that Defendant has exhausted his
administrative remedies.  (<u>Id</u>.)  Thus, the Court deems that
threshold requirement satisfied.

### 2. <u>Defendant fails to establish "extraordinary and compelling" reasons for his release</u>

Defendant argues that his asthma and obesity as well as the
dangers presented by COVID-19 in the prison environment
constitute extraordinary and compelling reasons justifying his
release.  (ECF 1113 at 12).

The Government opposes Defendant's motion and contends that
Defendant has not met his burden to show "extraordinary and
compelling reasons" justifying his release.  They argue that
Defendant's asthma is mild and that the medical care that
Defendant receives manages his condition.  (ECF 1157 at 8).
Similarly, they argue that Defendant was not obese when he
entered BOP custody and that it is a condition that he can
manage while in BOP custody.  (<u>Id</u>. at 2-3).  They also argue
that the fact that Defendant is vaccinated and boosted makes him
ineligible for compassionate release.  (<u>Id</u>. at 3).  The
Government separately underscores the efforts that the BOP has
made to curb the spread of the virus, the efficacy of the
available vaccines, and the BOP's management of the pandemic to
rebut Defendant's proffer of "extraordinary and compelling
reasons."  (<u>Id</u>. at 3-5).

The Court certainly takes seriously Defendant's asthma diagnosis and obesity.  But Defendant has not sufficiently shown how the risks associated with these conditions are exacerbated by COVID-19 where he is fully vaccinated.  Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. U.S.S.G. § 1B1.13, cmt. n.1(A).[2]  The Court cannot say that

---

[2] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  That said, the Third Circuit has approved a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners.  United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons.").  Even if the Court were to assume that a revised § 1B1.13 would expand the breadth of medical situations warranting release, the result here would not be different.  As set forth in more detail in this Opinion, the Defendant fails to demonstrate that his personal circumstances and jail conditions in light of the pandemic alone, or in tandem, represent extraordinary and compelling reasons warranting a sentence reduction and that the applicable sentencing factors under § 3553(a) similarly support such a reduction.

Defendant suffers from conditions that fall into the same
categories as "metastatic solid-tumor cancer, amyotrophic
lateral sclerosis (ALS), end-stage organ disease, and advanced
dementia[,]" examples offered by the Sentencing Commission of
the types of illnesses that might constitute "extraordinary and
compelling circumstances." Id. It also cannot say that
Defendant's condition substantially "diminishes the ability of
[Defendant] to provide self-care within the environment of a
correctional facility and from which he...is not expected to
recover." Id.

Though the Court accepts that Defendant's conditions could
make his incarceration challenging, the Court does not find
sufficient evidence in the record to show that he cannot care
for himself. While the CDC has identified asthma and obesity as
risk factors associated with COVID-19,[3] courts have held that the
mere fact that a defendant has a condition listed as a risk
factor by the CDC is not enough to warrant compassionate
release. United States v. Hicks, No. 20-3512, 2021 WL 4316829,
at *2 (3d Cir. Sept. 23, 2021) (affirming district court's
holding that the defendant's asthma did not present an
"extraordinary and compelling reason" justifying release where

---

[3] CENTERS FOR DISEASE CONTROL AND PREVENTION, COVID-19, PEOPLE WITH CERTAIN
MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-
extra-precautions/people-with-medical-conditions.html (last
visited August 31, 2022).

it was managed by the BOP); United States v. Muhammad, No. CR 14-502 (SDW), 2021 WL 568076, at *2 (D.N.J. Feb. 16, 2021), aff'd, No. 21-1311, 2022 WL 296593 (3d Cir. Feb. 1, 2022) ("[E]ven though people with asthma might be at an increased risk of severe illness from COVID-19, they are not definitively at an increased risk.  Defendant's medical records indicate that his asthma is currently controlled and that he has received appropriate medical monitoring and treatment of his condition including the prescription of an inhaler and oral steroids when required.") (internal citations omitted); United States v. Warrington, No. CR 18-179 (WJM), 2021 WL 825400, at *4 (D.N.J. Mar. 4, 2021) ("As the Court previously noted, obesity, on its own, has been regularly rejected as an extraordinary and compelling reason justifying compassionate release.").  In the absence of specific evidence personal to this Defendant showing a more heightened risk, the Court declines to find that Defendant has made a showing of medical conditions, even with the possibility of contracting COVID-19, which warrant his release.

Further, USP Canaan, where Defendant is housed, has mitigation efforts aimed at controlling the spread of the coronavirus that appear to be effective.  Currently, USP Canaan

has 39 active inmate tests and three staff positive tests.[4]   Over the course of the pandemic, no inmates have died as a result of infection by COVID-19, and 349 inmates have recovered from positive infections.[5]

In addition, according to the BOP, 1,282 inmates out of a population of 1,289 at USP Canaan have been fully vaccinated.[6] Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court finds that the vaccination rate inside USP Canaan weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his condition effectively at USP Canaan, does not present "extraordinary and compelling reasons" supporting his release.

### 3. **The 3553(a) Factors Weigh Against Defendant's Favor**

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.  Here, they do not.

---

[4] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited August 31, 2022).

[5] Id.

[6] Id.

Defendant principally argues that the fact that he has served his prison sentence in physical discomfort, that he does not present a danger to the public and that he has made rehabilitative progress while in prison support his motion. (ECF 1113 at 15-16).  He also states, without elaborating, that he has a reentry plan.  (Id.)  He does not otherwise address how the calculus of the § 3553(a) factors has changed since his original sentencing.  This argument does not tilt a full balancing of the § 3553(a) factors in his favor.

The Government argues the § 3553(a) factors weigh toward denying Defendant's motion.  They note that his criminal record began at the age of 17 and that he has two prior felony convictions for unlawful possession of a firearm.  (ECF 1157 at 12).  They further note the seriousness and extensiveness of the drug trafficking organization for which Defendant worked and for which Defendant made himself available to commit acts of violence.  (Id.)  They also argue that deterrence is an important consideration militating against Defendant's release especially where Defendant still has a significant amount of time left on his sentence.  (Id.)  Finally, the Defendant underscores the ongoing need to protect the public from further crimes from the Defendant given the conspiracy in which he was involved and his prior convictions.  (Id.)

The Court agrees with the Government and sees no reason to disturb the sentence that Judge Irenas previously imposed. First, while the Court certainly lauds any rehabilitative efforts by Defendant, it notes that Defendant committed the underlying offense after already having been convicted unlawfully possessing a firearm.  18 U.S.C. § 3553(a)(1); (ECF 1157 at 12).  At Defendant's sentencing Judge Irenas noted that Defendant was a smart young man and could have used his brainpower to lawful ends.  18 U.S.C. § 3553(a)(1); (ECF 738 at 22: 6-21).  In addition, the Defendant played an important role as runner and enforcer for a violent gang that operated with impunity in a public housing project in Atlantic City, distributing large amounts of cocaine and heroin, engaging in gun fights with rival gangs killing at least one competitor, and degrading and terrorizing that community.  Reducing Defendant's sentence now in the face of his role in these serious offenses would not promote respect for the law or provide just punishment.  18 U.S.C. § 3553(a)(2)(A).

Moreover, the fact that Defendant contributed to the rampant drug crime and drug use in Atlantic City despite his prior convictions make specific and general deterrence key.  18 U.S.C. § 3553(a)(2)(B); (ECF 738 at 23: 3-17).  The need to protect the public from Defendant's recidivist drug dealing also has not diminished since the Court initially sentenced him.  18

U.S.C. § 3553(a)(2)(C).  This fact is underscored by the
Defendant's serious list of episodes of misconduct while in
prison including weapons possession, assault and fighting.  As
the Government argues, the Defendant still poses a risk to the
community.  (ECF 1157 at 12; ECF 1157-3 at 1-3).

In sum, the advent of COVID-19 in connection with
Defendant's medical conditions do not demonstrate "extraordinary
and compelling reasons" justifying his release.  And even if
they did, there have been no material differences in the §
3553(a) factors that animated the original sentence.

**Conclusion**

For the reasons set forth above, Defendant's Motion for
Compassionate Release (ECF 1113) will be denied.[7]

An accompanying Order will issue.


Dated: September 1, 2022          s/   Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

[7] Implicit in this denial is a denial of Defendant's request for
counsel to be appointed.  Defendant is not entitled to counsel
on a compassionate release motion, and it would be a waste to
appoint counsel where the motion is futile.  United States v.
Bess, No. CR 16-522 (SDW), 2021 WL 5277201, at *3 n.6 (D.N.J.
Nov. 12, 2021) ("Defendants do not have a constitutional right
to appointment of counsel when seeking compassionate relief.
Although a district court has the discretion to appoint counsel,
where an underlying motion for compassionate release will fail,
appointing counsel would be futile.") (internal citations and
quotation marks omitted).  Also implicit in this denial is a
denial of Defendant's request for a hearing.  Fed. R. Crim. P.
43(b)(4) (stating that defendants are not entitled to be present
for a hearing for a motion for correction of sentence under 18
U.S.C. § 3582(c)).